UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Ana Calderon_

Write the full name of each plaintiff.

_____CV_____

(Include case number if one has been assigned)

-against-

_Bronx Care Hospital_
_Health First Insurance_

**COMPLAINT**

Do you want a jury trial?
☑ Yes    ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question**

☐   **Diversity of Citizenship**

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

NYs Human Rights, Mental hygiene law,
Americans with DisABility Act,
The FAmily And medical Leave Act
FAiR LABor StAndards Act

### B.  If you checked Diversity of Citizenship

#### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _____ , is a citizen of the State of

(Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, Bronx care/Health First , is incorporated under the laws of

the State of New York

and has its principal place of business in the State of New York

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in New York .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Ana _____ calderon
First Name        Middle Initial        Last Name

200 EAST 173rd St. Apt 507
Street Address

Bronx        NY        10457
County, City        State        Zip Code

_____        _____
Telephone Number        Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:  _Bronx care Hospital_

First Name                Last Name

Current Job Title (or other identifying information)

_1276 Fulton Ave_

Current Work Address (or other address where defendant may be served)

_Bronx_           _N Y_        _10456_

County, City          State        Zip Code

Defendant 2:  _Health First Insurance_

First Name          Last Name

Current Job Title (or other identifying information)

_100 church street_

Current Work Address (or other address where defendant may be served)

_New york_    _NY_     _10007_

County, City        State       Zip Code

Defendant 3:  _____

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State        Zip Code

Defendant 4:

First Name                        Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                        State            Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: Bronx, New York

Date(s) of occurrence: 6/17/2025 ; 07/14/2025 ; 8/04/2025

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

On 6/17/2025 ; I was Admitted to psychiatry at Bronx care Fulton Involuntarily. For the Second time during six years ; I have been terminated from work due to hospital and Insurance negligence. while being admitted Involuntarily ; LAws referenced protect my employment from termination For being sick ON January 2020, while mentally unstable, the Hospital was unable to properly asses my needs and place me on short or long term disABility at work. Lastly, ON 6/17/2025 ; Hospital staff Ignored me every day, treated me with no dignity and human care, and discriminated me

by denying my employer, the disability forms required by law to place me in short or long term disability. I was terminated from work on 8/4/2025 because my employer never received the requested forms. During three months, I asked Doctors everyday, to please complete my disability forms to secure my job, but they ignored me; mistreating me for being unable to

**INJURIES:** defend my self and for being mentally ill.

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

I have been extremely dissapointed, this situation has caused me severe emotional damages. Losing a job is very hurtful; and the financial loss affects me and my family.

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

I would like to request back pay since 2020, and penalty for emotional damages and personal damages: $2,000,000 from Bronxcare; and a percentage from HealthFirst.

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

03-20-2026

**Dated**

**Plaintiff's Signature**

Ana

**First Name**          **Middle Initial**          Last Name  Calderon

200 East 173rd St, Apt 507

**Street Address**

Bronx                                    NY              10457

**County, City**                         **State**          **Zip Code**

**Telephone Number**                     **Email Address (if available)**

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes    ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**Please note that delay in filling this court claim was due to severe mental symptoms, which affected my cognitive skills, reasoning capacity, and memory.**

Year 2020:

Timeline of events

-Admitted to Bronx Care Fulton for psychiatric care from 01/03/2020 through 01/05/2020

-Hospital staff acted with low quality by having no appropriate communication with me (the patient), to help me become aware of the ongoing situation, and helping me transition well to the community. No one at Bronx Care asked me for my employment situation and whether or not I had notified my job about the reasons for my absent. Given that I was mentally ill, hallucinating, and having a mental crisis; the hospital staff was responsible for ensuring that I had been placed in short or long term disability, as appropriate.

My job at the time – year 2020 (Ford Foundation) offered vast resources, including unlimited sick time, short term disability, and long term disability. Because I was unable to make decisions for myself, I did not ask my employer to place me in short or long term disability during the time needed to recover from the ongoing mental crisis. As a result, I was terminated while being ill, and suffered severe economic and emotional damages during the past six years; going through different relapses, worsening my symptoms, and affecting my professional career.

Year 2025: Admitted From 6 |17|2025 - 9/04/2025

For the second time during six years; I was admitted to BronxCare with a mental crisis while being employed by a private company (Mended and Mount LLP). The company was notified about my hospital admission around 06/17/2025. Mendes and Mount required disability forms to be completed by the hospital staff in order to assess my return to work and safeguard my job through the disability police. During two months, I begged the hospital staff (doctors, nurses, and social workers), to please complete these forms (attached), in order for me to be able to return to work after my hospital discharge. Doctors and other staff acted rude, ignored me, and belittled me by violating my civil and human rights to hospitalization with dignity and human care. The staff showed no morale, and for the second time caused my job termination for not complying with my employer medical certification forms. As a result, throughout the past six years, my income decreased by 70% while being on social security disability, the job terminations caused a big employment gap which created difficulty getting a job, and my family suffered economic damages due to my

lose of income; since they mainly depended on me due to their age and medical conditions.

As of today, the economic damages incurred, could have been prevented if the hospital staff would have showed compassion and humane care by ensuring that I kept my job while being hospitalized for several months.

I am suing the hospital for negligence, mistreatment, discrimination, and professional damages under the Human Rights Laws of NYC, FMLA, and ADA Acts. My salary at the time of my first job termination was $78,000 in 2020; and I demand an annual salary plus benefits for every year that I have been unemployed. My last salary (2025) was $95,000. Since August 2025, I have been unemployed due to hospital denial of medical certification forms. This situation has affected my emotions, my joy, my ability to live a better quality of life, it has limited my financial solvency, and has caused a lot of stress.

I would like to prove the hospital negligence and lack of care, breach of duty, and unprofessionalism; which caused me such severe financial losses, limiting my ability to independently buy a house, and manage my professional career.

I complained to Health First Insurance while admitted to the hospital (attached grievance letter), yet the insurance company was not able to investigate appropriately and assist me in ensuring the completion of the medical certification forms. Health First did not take any actions against Bronx Care for such discrimination on my disability, therefore, I am demanding a settlement for employment damages incurred at the hospital as a negligence by Health First Insurance.

HEALTH FIRST INSURANCE



**healthfirst**
Health Insurance for New Yorkers

October 10, 2025

ANA E CALDERON ORTIZ
200 E 173RD ST APT 507
BRONX NY 10457

Member Name: Ana E Calderon Ortiz
Member ID: 142442651

## GRIEVANCE RESOLUTION NOTICE

Dear Ana E Calderon Ortiz:

Healthfirst Medicare Plan takes grievances seriously and wants to assure you that all issues are thoroughly investigated. This letter informs you of the resolution of your grievance filed on 9/15/2025 with Healthfirst Medicare Plan.

As we understand, you are concerned about losing your job due to denied disability forms, lack of response from your doctor to private insurance inquiries, and the economic impact this has caused to your employment and credit.

We have sent this case to our Delivery Systems Engagement (DSE) Provider Network department for review. We have contacted (providers name) for review and response; however, we are still waiting for a response. DSE Provider Network will continue to work on this case for a response and resolution. We take concerns raised about providers within our network very seriously and we sincerely appreciate you bringing your concerns to our attention. To access our provider directory, you can visit www.HFDocFinder.org or call us for other provider options.

At this time, we are closing your case as resolved and we will continue following up until we confirm the resolution. We will keep you informed of any updates regarding the pending responses from the provider and our internal teams. If you would like more information about your benefits or need additional assistance, please contact Member Services at 1-866-463-6743.

These issues are tracked and followed for evidence of a pattern, and corrective actions are

Y0147_APG21_02 1422-21_C

taken as appropriate. We would like to formally apologize for any inconvenience you may have endured as a result of this issue.

If you have any questions regarding this notice, or require further assistance, please call Member Services at **1-888-260-1010** (TTY 1-888-542-3821), 7 days a week, 8am–8pm (October through March), and Monday to Friday, 8am–8pm (April through September).

You can have a representative act on your behalf, like a family member, friend, doctor, or lawyer if needed. If you have a representative, that person may obtain information for you and ask for the grievance. If you want a new representative, you and that person must sign and date a statement saying this is what you want. If you have any questions about choosing a representative, call us at **1-888-260-1010** (TTY 1-888-542-3821), 7 days a week, 8am–8pm (October through March), and Monday to Friday, 8am–8pm (April through September).

For complaints about the quality of care you have received, you also have the right to file a complaint with the Quality Improvement Organization for New York State (known as Livanta) by calling **1-866-815-5440** (TTY 1-866-868-2289).

Thank you for being a Healthfirst member.

Sincerely,

Healthfirst Appeals and Grievances Department

Enclosure

Coverage is provided by Healthfirst Health Plan, Inc., Healthfirst PHSP, Inc., and/or Healthfirst Insurance Company, Inc. (together, "Healthfirst").

Y0147_APG21_02 1422-21_C


Health Insurance for New Yorkers

June 18, 2025


ANA E CALDERON ORTIZ
200 E 173RD ST APT 507
BRONX NY 10457


Member Name: Ana E Calderon Ortiz
Member ID: 142442651
Case Number: 74283885


## GRIEVANCE RESOLUTION NOTICE

Dear Ana E Calderon Ortiz:

Healthfirst Medicare Plan takes grievances seriously and wants to assure you that all issues are thoroughly investigated. This letter informs you of the resolution of your grievance filed on 5/19/2025 with Healthfirst Medicare Plan.

As we understand, you are filing a grievance against Bronx Care Poe Medical & Dental. You stated that this hospital provides low quality services and doctors that do not improve patients' illnesses. You stated they do not improve health or provide intimacy and instead create fear. You stated they mentally abused and mentally tortured you through isolation and removal from society causing homelessness, financial loss, destruction of family and children, and your education. You stated they have also deteriorated your physical appearance and do not know how to process a patient with anger in society, so that patients with psychological issues can be successful and have a life. You reported that the doctors do not have communication with the patients. You reported they do not know how to provide specific medications for the patients, they require excessive medical appointments, and the hospital staff are given too much time off. You stated you did not want to see some of the doctors. You reported that the ambulance and police officers will remove you from your home to put you in a psychiatric accommodation. You stated you do not have a home. You stated you consider this as a medical abuse. You stated they have caused you financial issues. You stated the medication you want is outside of the country, and the one that they are giving you is from the hospital. You stated that your human rights have been violated.

As part of our investigation, we appreciate you taking the time to notify us of your concerns.

We are conducting an investigation based on your grievance. The results of the investigation are confidential and are tracked and followed for evidence of a pattern, and corrective actions are taken as appropriate.

We tried to contact BronxCare Health System to discuss your concerns however, the attempts were unsuccessful. Your concerns were submitted to our Provider Relations team for assistance in contacting the provider, which is responsible for provider outreach and education, as well as tracking and trending issues. They will further educate the provider on proper member treatment.

We will close your case at this time and apologize for any inconvenience. If you would like more information about your Medicare benefits, out-of-pocket costs, what may be covered, or to request your evidence of coverage for the 2025 year, please contact Member Services at 1-888-260-1010 for assistance or you can go to the plan website at http://healthfirst.org.

These issues are tracked and followed for evidence of a pattern, and corrective actions are taken as appropriate. After reviewing your concerns, Healthfirst Medicare Plan has taken the necessary steps to correct the issue(s) that you have brought to our attention.

**We would like to formally apologize for any inconvenience you may have endured as a result of this issue.**

If you have any questions regarding this notice, or require further assistance, please call Member Services at **1-888-260-1010** (TTY 1-888-542-3821), 7 days a week, 8am–8pm (October through March), and Monday to Friday, 8am–8pm (April through September).

You can have a representative act on your behalf, like a family member, friend, doctor, or lawyer if needed. If you have a representative, that person may obtain information for you and ask for the grievance. If you want a new representative, you and that person must sign and date a statement saying this is what you want. If you have any questions about choosing a representative, call us at **1-888-260-1010** (TTY 1-888-542-3821), 7 days a week, 8am–8pm (October through March), and Monday to Friday, 8am–8pm (April through September).

For complaints about the quality of care you have received, you also have the right to file a complaint with the Quality Improvement Organization for New York State (known as Livanta) by calling **1-866-815-5440** (TTY 1-866-868-2289).

Thank you for being a Healthfirst member.

Sincerely,

Healthfirst Appeals and Grievances Department

Y0147_APG21_02 1422-21_C

Enclosure

Coverage is provided by Healthfirst Health Plan, Inc., Healthfirst PHSP, Inc., and/or Healthfirst Insurance Company, Inc. (together, "Healthfirst").

MENDES AND MOUNT LLP



**Bronx**Care
HEALTH SYSTEM

1276 Fulton Avenue
Bronx, NY 10456
Phone (718) 590-1800

Date: 07/31/2025
Re: Calderon-Ortiz
DOB: 6/6/1993

To Whom It May Concern:

This letter verifies that the above-named individual is admitted and receiving

Treatment at the Bronx Care Center from 6/17/2025 to Present.

If you have any questions, please feel free to contact us at

Sincerely,

Ana Zorrilla, LCSW

1276 Fulton Avenue, Bronx, New York 10456
T 718.590.1800 | bronxcare.org

**Mount Sinai**
A Clinical Affiliate of The Mount Sinai Hospital and an Academic
Affiliate of the Icahn School of Medicine at Mount Sinai

 **MENDES**

Molly Donaldson, SHRM-CP
Director of Human Resources
(212) 261-8158
Molly.Donaldson@mendes.com

July 9, 2025

Ana Calderon
200 East 173rd Street
Bronx, NY 10457

Dear Ms. Calderon:

Since June 17, 2025, you have been absent from work due to a medical issue. As of the upcoming payroll on Friday, July 11, 2025, the Firm has applied your remaining PTO balance and advanced your PTO for the remainder of 2025 to cover your absences through July 1, 2025. To further support you during this time, the Firm will cover both the employee and employer portions of your insurance premiums through July 31, 2025.

Following our brief conversation on June 18, 2025, we have made several attempts to contact you without success. Our most recent outreach efforts occurred on June 25, June 26, and July 9, 2025.

Through a recent conversation with your emergency contact Pedro Calderon on July 9, 2025, and as confirmed by a letter from BronxCare Health System dated June 26, 2025, we understand that you are currently receiving medical treatment at that facility. At this time, we recognize that your return-to-work date remains uncertain..

You may be entitled to some reasonable accommodation under the Americans with Disabilities Act ("ADA") and/or applicable state and local law. To determine this, we must first engage in a dialogue with you to determine the nature of your condition, the nature and extent of any physical or mental limitations that you may have a result of your condition, and whether you may be entitled to an accommodation that would allow you to perform the essential functions of your job as a Senior Staff Accountant in a satisfactory manner. This is referred to as the "interactive process."

Enclosed is a form that must be completed by a qualified behavioral healthcare provider relating to your current condition. Please take this letter and the enclosed form to your healthcare provider and ask them to provide all of the requested information. The form must be signed by your healthcare provider and returned to us by July 18, 2025. Failure to provide the requested information in a timely manner may result in the termination of the interactive process and, if you do not return to work, may be considered job abandonment.

Thank you for your anticipated cooperation in securing your doctor's response to this request. Please contact me if you have any questions or concerns.

Best,

*M. Donaldson*

Molly Donaldson, SHRM-CP
Director of Human Resources
Mendes & Mount, LLP

## INTERACTIVE PROCESS QUESTIONNAIRE

Mendes & Mount, LLP is engaged in the interactive process with Ana Calderon ("the Employee") to determine whether the Employee may be entitled to a reasonable accommodation. As part of that process, we require the information requested herein.

**NOTE:** The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers from obtaining genetic information as to any employee or family member except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family members receiving assistive reproductive services.

1.  What is your diagnosis of Employee's condition?

    **Response:** _____

    _____

    _____

    _____

    _____

2.  What is your opinion as to the cause of Employee's condition?

    **Response:** _____

    _____

    _____

    _____

3.  Provide a detailed description of the nature and severity of Employee's symptoms.

    **Response:** _____

    _____

    _____

    _____

    _____

_____

_____

4.    Please describe the proposed course of treatment.

**Response:** _____

_____

_____

_____

_____

_____

5.    What is your prognosis as to the duration of Employee's condition?

**Response:** _____

_____

_____

_____

_____

_____

6.    Please describe in detail the limitations on the Employee's regular life activities as a result of the Employee's condition and/or the treatment of the condition (e.g., ability to care for himself/herself, ability to stand, sit, walk, see, eat, sleep, lift, climb stairs, read, concentrate, think, etc.) and the expected duration of such limitations. The description of the Employee's limitations must be as objective and specific as possible. Regarding the duration of the Employee's limitations, please be as specific as possible (e.g., ten days; three weeks; two months, etc.). If the duration of the Employee's limitations is indefinite or permanent, so indicate.

**Response:** _____

_____

_____

_____

_____

_____

7.  State whether the Employee's condition precludes him/her from performing any of the essential physical or cognitive functions of his/her job. To assist you in this regard, a job description that sets forth the essential physical and cognitive functions of the Employee's job is attached.

_____ Yes        _____ No

8.  If the Employee's condition does preclude him/her from performing any of the essential functions of his/her job, please identify the specific job functions that the Employee is unable to perform.

**Response:** _____

_____

_____

_____

_____

_____

_____

9.  If you believe that there are any reasonable accommodations (i.e., modifications or changes to the work environment or to how the work is typically done) that would permit the Employee to perform the essential functions of his/her job listed in the response to Item No. 8 **at this time**, please describe the accommodation(s).

**Response:** _____

_____

_____

_____

_____

_____

10. If the Employee is not currently able to perform all of the essential functions of his/her job, with or without accommodation, please provide your medical opinion as to the anticipated return to work date for the Employee (i.e., the date when the Employee would be able to perform all of the essential physical and cognitive functions of his/her job with or without reasonable accommodation). If you are unable to identify a return to work date at this time (i.e., the Employee will be unable to perform all of the essential job functions with or without reasonable accommodation for an indefinite period of time or permanently), so indicate. Note: A statement that the Employee will not be able to return to work until "at least" a given date is not helpful in the context of this process. Such assessment will be deemed the equivalent of a statement that the Employee will be unable to return to work for an indefinite period.

**Response:** _____

_____

_____

_____

_____

_____

11. If you believe that there are any reasonable accommodations (i.e., modifications or changes to the work environment or to how the work is typically done) that would permit the Employee to perform the essential functions of his/her job listed in the response to Item No. 8 **on his/her return to work date**, please describe the accommodation(s).

**Response:** _____

_____

_____

_____

_____

_____

12. Is there a significant risk of substantial harm to the health or safety of the Employee or other individuals if the Employee is allowed to perform the duties of his/her position?

_____ **Yes**        _____ **No**

4

13.  If your response to Item No. 12 is "YES," please describe the risk of harm.

**Response:** _____

_____

_____

_____

_____

_____

14.  Are there any accommodations that would reduce or eliminate any direct threat that you have identified in your response to Item 13 above?

**Response:** _____

_____

_____

_____

_____

_____

_____
Signature of Healthcare Provider

_____
Print Name

Date:_____

Note: If you would like to observe someone performing the duties of the Employee's position before you respond to this questionnaire, please contact Molly Donaldson to arrange a time for such observation.

Molly Donaldson, Director of Human Resources
750 7th Avenue
New York, NY 10019
212-261-8158
Molly.Donaldson@mendes.com

10822144.1

5

 **MENDES**



www.mendes.com

Molly Donaldson, SHRM-CP
Director of Human Resources
(212) 261-8158
Molly.Donaldson@mendes.com

July 14, 2025

Ana Calderon
200 East 173rd Street
Bronx, NY 10457

Dear Ms. Calderon:

Please find enclosed complete information on Short-Term Disability from our insurer, Guardian. We have completed the employer portion, Part C, of the NY DB–450 form. Once you complete Part A and have your doctor complete Part B, you will need to submit the completed form (with all parts fully completed) to Guardian using the instructions in the enclosed. Guardian will send a letter to you confirming whether your claim has been approved within 18 days of submission.

Please note:
- If a short-term disability appears as if it will extend beyond the maximum of 26 weeks, the long-term disability carrier will be notified at the 5th month of short-term disability. Appropriate application for long-term disability benefits in accordance with the Firm's policy should be made to our Long-term Disability Carrier (Unum) by the employee.
- Disability payments, if any, will come from the state and not from your employer.

Please contact me if you have any questions or concerns.

Best.

*M. Donaldson*

**Molly Donaldson, SHRM-CP**
**Director of Human Resources**
Mendes & Mount, LLP



**NEW YORK DBL
State Disability
Claim Packet**

# 8 Guardian·

### Instructions for filing your Guardian - New York DBL Claim (NY DB-450)

This packet contains the forms that are needed to process your claim for New York State Disability Benefits. Please keep this page for future reference and for the Guardian contact information.

### Employee / Claimant Responsibilities:

1). It is your responsibility to file your claim within 30 days following the start of your disability. Late filing could result in a claim denial or reduction.

2). Your employer should complete and sign their portion (Part C) of the claim form and return it to you for your completion and filing.

3). You should fully complete your portion of the claim form (Parts A and questions 1 through 3 in Part B), and then supply your treatment provider with the form so that they can fully complete their section (Part B).

4). We recommend that you submit ALL sections of the claim (employee, employer, and treatment provider) at the same time. Separate submissions could delay the handling of your claim.

5). It is very important that ALL sections are completed fully, accurately, and legibly. Missing, incomplete, or illegible information could delay payment of your claim.

6). Your signature acknowledges that, to the best of your knowledge, the forms have been completed accurately and truthfully.

### Employer Responsibilities:

1) As the employer, you should fully complete your portion (Part C) of the claim and return it to your employee for further completion and submission.

2) It is very important that ALL sections are completed fully, accurately, and legibly. Missing, incomplete, or illegible information could delay payment of the claim.

3) To ensure the correct calculation of your employee's NY DBL benefit amount, use the table in Part C to accurately enter the gross wages they earned during the last eight weeks prior to disability.

4) If your employee has Guardian Short Term Disability coverage, you should also complete the STD-PML Supplement portion. This enables us to capture the employee's earnings, taxability, effective date, and job duties as related to the Short Term Disability coverage.

**Guardian Contact / Claim Filing Information
Guardian Insurance
State Disability Claims
P.O. Box 14332
Lexington KY 40512**

**Customer Service # 1-800-268-2525    Fax # 610-807-2953    Email: State_Disability_Claims@glic.com**

# New York State Disability Benefits
# STATEMENT OF RIGHTS



**Workers' Compensation Board**

## If you are unable to work due to a non-occupational illness or injury, you may be entitled to disability benefits.

1. You may be entitled to statutory disability benefits for a non-work-related injury or illness (including disability due to pregnancy) beginning with the eighth consecutive day of disability. Disability benefits are paid **directly to you** by your employer's insurer, **not through your employer**, unless your employer is an approved self-insurer. You can take up to 26 weeks of disability at 50% of your average weekly wage, capped at $170 per week. Generally, your average weekly wage is the average of your last eight weeks of pay prior to starting disability. Your employer or union may provide different benefits, at least as favorable as statutory, under an approved disability benefits plan or agreement.

2. If you also take New York State (NYS) Paid Family Leave (PFL), your combined total disability leave and PFL in any consecutive 52-week period may not exceed 26 weeks. You cannot take PFL and disability leave at the same time.

3. You can be treated by any physician, podiatrist, chiropractor, dentist, nurse midwife, or psychologist who can certify your disability. Your medical bills are not covered, unless your employer and/or union provides for the payment of medical bills under an approved disability benefits plan or agreement.

4. Your employer may **not** ask you to waive your right to disability benefits. Employers may collect a maximum contribution of 60 cents/week to offset the insurance premium (unless the additional contribution is part of an approved plan). **You cannot be discriminated or retaliated against for requesting or taking disability benefits.**

5. Your employer or employer's insurer is required to begin payment or issue a *Notice of Denial (Form DB-DEN)* or *Notice of Rejection (Form DB-451)* within 18 days of your first day of disability leave or receipt of your completed claim, whichever is later. If you receive *Form DB-DEN*, you will also receive *Form DB-451* with additional information within 45 days of your first day of disability leave or the receipt of your completed claim, whichever is later. If after these 45 days, you have not received benefits or *Form DB-451*, promptly contact the NYS Workers' Compensation Board (Board) at **(877) 632-4996**. NOTE: If you receive *Form DB-451* and disagree, you may request a review by writing to the Board at the bottom right address.

## To file a claim:

1. Obtain a *Notice and Proof of Claim for Disability Benefits (Form DB-450)*, either from the Board at wcb.ny.gov, or from your employer, or your employer's insurer.

2. Follow instructions to complete/submit the form, which includes sections your employer and health care provider must complete.

3. Submit the form to your employer's insurer within 30 days of your first day of disability. If your claim is not paid promptly, contact your employer or their insurer. If you file late, you may not be paid for any disability period more than two weeks before the date you filed. Late filings may be excused if you can show it wasn't reasonably possible to file earlier. No benefits are payable if you file more than 26 weeks after your disability begins, or after you return to work.

**Do not assume that your employer has filed a claim on your behalf; filing a claim is your responsibility.**

Note: If your disability is the result of an automobile accident, and you have filed a claim for no-fault benefits, **you must** also file a *Form DB-450* for disability benefits. If you do not file for disability benefits, the no-fault insurer may reduce your no-fault payments.

**IMPORTANT:** In such cases, if you are not entitled to disability benefits, immediately advise the no-fault insurer.

**FOR HELP OBTAINING A CLAIM FORM OR FILLING IT OUT, OR OTHER QUESTIONS ABOUT BENEFITS FOR YOUR NON-WORK-RELATED INJURY OR ILLNESS, PLEASE CALL (877) 632-4996. A BOARD REPRESENTATIVE WILL HELP.**

This information is a simplified presentation of your rights as required by Section 229 of the Disability and Paid Family Leave Benefits Law. Your employer's disability benefits insurance carrier is:
**The Guardian Life Insurance Company of America**
**10 Hudson Yards, New York, NY 10001**
**800-268-2525**

PRESCRIBED BY THE CHAIR,
WORKERS' COMPENSATION BOARD
NYS Workers' Compensation Board
Disability Benefits Bureau
PO Box 9029, Endicott, NY 13761-9029

**WCB.NY.GOV**

DB-271S (12/23)

**New York State**
## NOTICE AND PROOF OF CLAIM FOR DISABILITY BENEFITS

## How to request Disability Benefits

**Do not submit this form prior to your first date of disability. You must submit your completed claim form within <u>30 calendar days of your first day of disability</u> to avoid losing benefits. Keep a copy of all forms and documentations for your records.**

1. If you are using this form because you became disabled **while employed** or you became disabled **within four (4) weeks after termination of employment**, your completed claim should be submitted to your employer or your last employer's insurance carrier. You may find your employer's disability insurance carrier on the Workers' Compensation Board's website, www.wcb.ny.gov, using Employer Coverage Search.
2. If you are using this form because you became **disabled after having been unemployed for more than four (4) weeks after termination of employment**, your completed claim MUST be mailed to: **Workers' Compensation Board, Disability Benefits Bureau, PO Box 9029, Endicott, NY 13761-9029**. If you answered "Yes" to question 13.B.4., please complete and attach Form DB-450.1.

**Note: This form has a section to be filled out by your healthcare provider, and a section to be completed by your employer. Before providing the form to your employer, fill out your section and make a copy to keep.**

- The health care provider is required to return the form to you with Part B completed within seven days. If there is a delay, you must wait to submit the form to your insurance carrier. If Part B is not complete (or has incomplete answers) there may be delay in the payment of benefits.
- Your employer is required to return the form to you with Part C completed within three business days. If there is a delay, you do not have to wait to proceed – you should send the form to your insurance carrier. They cannot deny your request for disability benefits solely because your employer failed to fill out their section.

**Important to know:**

You will receive a response within 18 days of your first day of disability leave or the employer or carrier's receipt of your completed claim, whichever is later. If your claim is rejected, you will receive either a Notice of Denial of Claim for Disability Benefits (Form DB-DEN) or a Notice of Total or Partial Rejection of Claim for Disability Benefits (Form DB-451). If you receive a Form DB-DEN, you will receive a form DB-451 with additional information within 45 days of your first day of disability leave or the employer or carrier's receipt of your completed claim, whichever is later.

If you do not receive a response within 18 days (or the Form DB-451 within 45 days) or if you have questions about your disability benefits claim, please call your employer's insurance carrier. For general information about disability benefits, please visit www.wcb.ny.gov or call the Board's Disability Benefits Bureau at (877) 632-4996.

### Notice and Proof of Claim for Disability Benefits (Form DB-450) Instructions

**PART A - EMPLOYEE INFORMATION** (to be completed by the employee)

You must answer all questions in this part.

**Question 9:** Enter the best estimate of average gross weekly wage. Fill out the table using your gross wages from your last employer prior to disability. If you had more than one employer in the previous 8 weeks prior to your disability, include all wage information from those employer(s) as well.

Step 1: Add all gross wages received (before any deductions) over the last eight weeks prior to the first day of disability, including overtime and tips earned. (See Step 3 for instructions for calculating bonuses and/or commissions.)

Step 2: Divide the gross wages calculated in step one by eight (or the number of weeks worked if less than eight) to calculate the average weekly wage.

Step 3: If you received bonuses and/or commissions during the 52 weeks preceding the first day of disability, add the prorated weekly amount to the average weekly wage. To determine the prorated weekly amount, add all bonuses/commissions earned in the preceding 52 weeks and then divide by 52.

**PART B - HEALTH CARE PROVIDER'S STATEMENT** (to be completed by the health care provider)

The health care provider must fill in this statement completely and return it within seven days of receipt of this form.

**PART C - EMPLOYER INFORMATION** (to be completed by the employer)

The employer must complete and return to the employee within three business days of receipt.

**Question 6:** If wages were continued during disability, specify how wages were paid – through salary continuation, use of paid time off, sick time, etc.

**Question 8:** Enter the wages earned by the employee during the last eight weeks preceding the first day of disability. The gross amount paid is the employee's gross weekly pay, including any overtime and tips earned for that week, plus the weekly prorated amount of any bonus or commission received during the preceding 52 weeks. (For detailed steps, see Question 9 in the Part A instructions). Calculate the gross average weekly wage by adding up the gross amounts paid, and then dividing the total by eight (or number of weeks worked if less than eight).

**New York State**

## NOTICE AND PROOF OF CLAIM FOR DISABILITY BENEFITS

**PART A - CLAIMANT'S INFORMATION** (Please Print or Type)

1. Last Name: _____ First Name: _____ MI: ___

2. Mailing Address (Street & Apt. #): _____

   City: _____ State: _____ Zip: _____

3. Daytime Phone #: _____ Email Address: _____

4. Social Security #: _____ - ___ - _____ 5. Date of Birth: ___ / ___ / ____ 6. Gender: ☐ M ☐ F ☐ X

7. Describe your disability (if injury, also state how, when and where it occurred): _____

8. Date you became disabled: ___ / ___ / _____ Did you work on that day?: ☐ Yes ☐ No

   Have you recovered from this disability?: ☐ Yes ☐ No    If Yes, date you were able to return to work: ___ / ___ / _____

   Have you since worked for wages or profit?: ☐ Yes ☐ No   If Yes, list dates: _____

9. Name of last employer prior to disability. If more than one employer in previous eight (8) weeks, name all employers. Average Weekly Wage is based on all wages earned in last eight (8) weeks worked.

| LAST EMPLOYER(S) PRIOR TO DISABILITY | | | PERIOD OF EMPLOYMENT | | |
|---|---|---|---|---|---|
| Firm or Trade Name | Address | Phone Number | First Day (MM/DD/YYYY) | Last Day Worked (MM/DD/YYYY) | Average Weekly Wage (Include Bonuses, Tips, Commissions, Reasonable Value of Board, Rent, etc.) |
| | | | | | $0.00 |
| | | | | | $0.00 |

**Enter total wages earned in the last 8 weeks prior to the first day of disability below (Include wages for all employers listed above)**

| Week No. | Last Day Worked (MM/DD/YYYY) | No. of Days Worked | Gross Amount Paid |
|---|---|---|---|
| 1 | | | $0.00 |
| 2 | | | $0.00 |
| 3 | | | $0.00 |
| 4 | | | $0.00 |
| 5 | | | $0.00 |
| 6 | | | $0.00 |
| 7 | | | $0.00 |
| 8 | | | $0.00 |
| | | Calculated average gross weekly wage: | $0.00 |

10. My job is or was: _____ 11. Union Member: ☐ Yes ☐ No  If "Yes": _____
    <span>Occupation</span>                                                                            <span>Name of Union or Local Number</span>

12. Were you claiming or receiving unemployment prior to this disability? ☐ Yes ☐ No

    If you did **not** claim **or** if you claimed but did **not** receive unemployment insurance benefits *after* LAST DAY WORKED, explain reasons fully: _____

    If you did receive unemployment benefits, provide all periods collected: _____

DB-450 (10-23) Page 1 of 4

DB-450 10-23

**PART A - CLAIMANT'S INFORMATION** (Please Print or Type)

Name: _____   Social Security Number: _____

13. For the period of disability covered by this claim:

   A. Are you receiving wages, salary or separation pay?   Yes ☐ No ☐

   B. Are you receiving or claiming:

     1. Unemployment Benefits?   Yes   No   2. Paid Family Leave?   Yes   No

     3. Workers' compensation for work-connected disability? ☐Yes ☐ No

     4. No-Fault motor vehicle accident? ☐ Yes ☐No **or** personal injury involving third party? ☐ Yes ☐ No

     5. Long-term disability benefits under the Federal Social Security Act for *this* disability? ☐Yes ☐No

   **IF "YES" IS CHECKED IN ANY OF THE ITEMS IN 13, COMPLETE THE FOLLOWING:**

   I have: ☐received ☐claimed from:_____for the period: ___ / ___ / _____ to: ___ / ___ / _____

2. In the year (52 weeks) before your disability began, have you received disability benefits for other periods of disability? ☐Yes ☐ No

   If yes, Paid by:_____from: ___ / ___ / _____ to: ___ / ___ / _____

3. In the year (52 weeks) before your disability began, have you received Paid Family Leave? ☐Yes ☐ No

   If yes, Paid by:_____from: ___ / ___ / _____ to: ___ / ___ / _____

4. If you became disabled while employed or within four weeks of your last day worked, did your employer provide you with your rights under Disability Law within 5 days of your notice or request for disability forms? ☐ Yes ☐No

---

I hereby claim Disability Benefits and certify that for the period covered by this claim I was disabled. I have read the instructions of this form and certify that the foregoing statements, including any accompanying statements are, to the best of my knowledge, true and complete.

_____          _____
         **Claimant's Signature**                 **Date**

An individual may sign on behalf of the claimant only if they are legally authorized to do so and the claimant is a minor, mentally incompetent or incapacitated. If signed by other than claimant, print information below and complete and submit Form OC-110A, Claimant's Authorization to Disclose Workers' Compensation Records.

_____   _____   _____
    **On behalf of Claimant**          **Address**       **Relationship to Claimant**

---

**PART B - HEALTH CARE PROVIDER'S STATEMENT** (Please Print or Type)

THE HEALTH CARE PROVIDER'S STATEMENT MUST BE FILLED IN COMPLETELY. THE ATTENDING HEALTH CARE PROVIDER SHALL COMPLETE AND **RETURN TO THE CLAIMANT WITHIN SEVEN (7) DAYS OF RECEIPT OF THIS FORM**. If disability is caused by or arising in connection with pregnancy, enter estimated delivery date in item 7-e. **INCOMPLETE ANSWERS MAY DELAY PAYMENT OF BENEFITS.**

1. Last Name: _____   First Name: _____   MI: __

2. Gender: ☐ M ☐F ☐ X   3. Date of Birth: ___ / ___ / _____

4. Diagnosis/Analysis: _____   Diagnosis Code: _____

   a. Claimant's symptoms: _____

   b. Objective findings: _____

5. Claimant hospitalized?:   ☐ Yes ☐No   From: ___ / ___ / _____ To: ___ / ___ / _____

6. Operation indicated?:   ☐ Yes ☐ No   a. Type _____   b. Date ___ / ___ / _____

| 7.      ENTER DATES FOR THE FOLLOWING | MONTH | DAY | YEAR |
|---|---|---|---|
| a. Date of your first treatment for this disability | | | |
| b. Date of your most recent treatment for this disability | | | |
| c. Date Claimant was unable to work because of this disability | | | |
| d. Date Claimant will again be able to perform work (Even if considerable question exists, estimate date. Avoid use of terms such as unknown or undetermined.) | | | |
| e. If pregnancy related, please check box and enter the date ☐ estimated delivery date OR ☐ actual delivery date | | | |

8. In your opinion, is this disability the result of injury arising out of and in the course of employment or occupational disease?: ☐ Yes ☐ No   If "Yes", has medical been filed with the Board? ☐ Yes ☐ No

---

I certify that I am a:

_____   _____   _____
(Physician, Chiropractor, Dentist, Podiatrist, Psychologist, Nurse-Midwife)   Licensed or Certified in the State of   License Number

_____   _____   _____
  **Health Care Provider's Printed Name**     **Health Care Provider's Signature**      **Date**

_____   _____
   **Health Care Provider's Address**      **Phone #**

**PART C - EMPLOYER INFORMATION** (to be completed by the employer)

Employee Name: Ana Calderon                 Social Security Number: 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

1. **Business's full legal name and mailing address**
   Business Name Mendes & Mount, LLP

   Mailing Address 750 7th Avenue

   City, State New York, NY

   Zip Code 10019

   Country (if not U.S.A.)

2. **Employer's FEIN:** 13-5535371

3. **Contact Information:**
   Employer's contact name for questions relating to disability: Molly Donaldson

   Employer's contact telephone number: 212-261-8158

   Employer's contact email address: molly.donaldson@mendes.com

4. **Is the employee a member of a union that provides the statutory disability benefits?**  ☐ Yes ■ No
   *If yes, provide Union name, address, and contact information

5. **Employee Information:**
   Employee's role:  ■ Employee  ☐ Proprietor  ☐ Partner  ☐ Spouse of Employer  ☐ Owner  ☐ Co-Owner
   Employee's date of hire (MM/DD/YYYY): 04/21/2025

   Date employee last worked: 06/16/2025

   Date employee returned to work (if applicable): N/A

6. **Were wages continued during disability?**  ■ Yes ☐ No

   If yes, what type? (PTO, sick time, other): PTO

   If yes, is reimbursement requested by employer?  ☐ Yes ■ No

   *Reimbursement is only available if employer continued salary during disability or employee used sick time

7. **Is the employee's disability work-related?**  ☐ Yes ■ No

8. **Enter the last 8 weeks of gross wages for the employee immediately prior to the disability starting with the week the disability began, and calculate the average gross weekly wage (include bonuses, tips, commissions, reasonable value of board, rent, etc. and see instructions for more information)**

| Week No. | Week ending date (MM/DD/YYYY) | No. of days worked | Gross amount paid |
|---|---|---|---|
| 1 | 6/22/2025 | 1 | $1,834.03 $0.00 |
| 2 | 6/15/2025 | 4 | $1,834.03 $0.00 |
| 3 | 6/8/2025 | 4 | $1,869.14 $0.00 |
| 4 | 6/1/2025 | 4 | $1,869.14 $0.00 |
| 5 | 5/25/2025 | 5 | $1,928.48 $0.00 |
| 6 | 5/18/2025 | 5 | $1,928.48 $0.00 |
| 7 | 5/11/2025 | 5 | $1,989.55 $0.00 |
| 8 | 5/4/2025 | 5 | $1,989.55 $0.00 |
| | | Calculated average gross weekly wage: | $1,905.30 $0.00 |

9. **In the preceding 52 weeks has the employee taken leave for:**

   ☐ NYS Disability  ☐ PFL  ☐ Both Disability and PFL  ■ None
   **Disability:** Please provide specific dates for disability
   PFL: Please provide specific dates for PFL

10. **Is employee still in your employment?**  ■ Yes ☐ No

    If no, date employment was terminated

**PART C - EMPLOYER INFORMATION** (to be completed by the employer)

Employee Name: Ana Calderon                          Social Security Number: 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

11. If employee received unemployment benefits, date the benefit was last received:_____

12. Employee's normal work schedule:  ×_ M _×_ T _×_ W _×_ Th_×_ Fri ___Sat ___Sun

I have read and acknowledge the fraud information below and affirm that to the best of my knowledge and belief, the information I have provided is true and accurate.

Employer Name and Title: Stephanie Dowe, HR Generalist

Employer Signature: _____

Employer Contact Phone Number: 212-261-8187

Date: 7/14/2025

Notification Pursuant to the New York Personal Privacy Protection Law (Public Officers Law Article 6-A) and the Federal Privacy Act of 1974 (5 U.S.C. § 552a). The Workers' Compensation Board's (Board's) authority to request that claimants provide personal information, including their social security number, is derived from the Board's investigatory authority under Workers' Compensation Law (WCL) § 20, and its administrative authority under WCL § 142. This information is collected to assist the Board in investigating and administering claims in the most expedient manner possible and to help it maintain accurate claim records. Providing your social security number to the Board is voluntary. There is no penalty for failure to provide your social security number on this form; it will not result in a denial of your claim or a reduction in benefits. The Board will protect the confidentiality of all personal information in its possession, disclosing it only in furtherance of its official duties and in accordance with applicable state and federal law

HIPAA NOTICE - In order to adjudicate a workers' compensation claim or disability benefits claim, WCL 13-a(4)(a) and 12 NYCRR 325-1.3 require health care providers to regularly file medical reports of treatment with the Board and the insurance carrier or employer. Pursuant to 45 CFR 164.512 these legally required medical reports are exempt from HIPAA's restrictions on disclosure of health information.

Disclosure of Information: The Board will not disclose any information about your case to any unauthorized party without your consent. If you choose to have such information disclosed to an unauthorized party, you must file with the Board an original signed Form OC-110A "Claimants Authorization to Disclose Workers' Compensation Records." This form is available on the WCB website (www.wcb.ny.gov) and can be accessed by clicking the "Forms" link. If you do not have access to the internet please call (877) 632-4996. In lieu of Form OC-110A, you may also submit an original signed, notarized authorization letter.

FRAUD ACKNOWLEDGEMENT - An employer or insurer, or any employee, agent, or person acting on behalf of an employer or insurer, who KNOWINGLY MAKES A FALSE STATEMENT OR REPRESENTATION as to a material fact in the course of reporting, investigation of, or adjusting a claim for any benefit or payment under this chapter for the purpose of avoiding provision of such payment or benefit SHALL BE GUILTY OF A CRIME AND SUBJECT TO SUBSTANTIAL FINES AND IMPRISONMENT



**MENDES**

www.mendes.com

Molly Donaldson, SHRM-CP
Director of Human Resources
(212) 261-8158
Molly.Donaldson@mendes.com

Delivered via FedEx mail to:
Ana Calderon
200 East 173rd St., Apt 507
Bronx, NY 10457

Delivered via email to:
Ana Zorrilla, Social Worker
for hand delivery to
Ana Calderon, azorrill@bronxcare.org

August 4, 2025

Dear Ms. Ana Calderon:

We are writing to formally notify you that your employment with Mendes & Mount, LLP will be terminated effective August 4, 2025.

Since 6/17/25, you have been absent from work due to a medical issue. During our brief conversation on 6/18/25, after two days of unexcused absence, you informed us that you had been admitted to a mental health facility. In response, and in an effort to comply with our obligations under state and federal law, we initiated the interactive process to evaluate your situation and determine how best to support you.

As part of that process, through FedEx mailings to your emergency contact Pedro Calderon on 7/11/25 and 7/23/25, we provided you with an interactive process questionnaire and requested completion by your treating provider to help the Firm assess your ability to return to work and/or any need for accommodation. Mr. Calderon confirmed delivery to you of all documents sent by the Firm. A copy of this paperwork was also sent via email to Mr. Calderon on 7/22/25 and to your Social Worker, Ana Zorrilla, on 7/28/25. Short-Term Disability information and paperwork from the Firm's insurer, Guardian, was also provided to you by the Firm through FedEx mailing on 7/16/25.

At various times the Firm was advised by you that the completed interactive process paperwork would be forthcoming; however, to date, despite multiple follow-ups and an extension of the deadline for completion from 7/18/25 to 8/1/25, we have not received a completed questionnaire or further communication regarding completion of the necessary documentation. Without this information, we are unable to evaluate your current condition and therefore cannot consider any potential accommodations.

Through contact with you and as confirmed by letters from BronxCare Health System dated June 26 and July 31, we understand that you are currently receiving medical treatment at that facility and that a return-to-work date continues to remain uncertain at this time.

August 4, 2025
Page 2



Due to the abovementioned information, the decision has been made to terminate your employment, effective August 4, 2025.

Your final paycheck, which included an advance of all PTO you would have been eligible for in the year 2025, was paid to you via direct deposit on 7/11/25. Enclosed, you will find information regarding COBRA continuation of benefits. Please be advised that your dental and vision coverage will remain in effect through August 31, 2025.

Please note that the Firm will coordinate with Mr. Calderon to ensure the personal effects you left in the office are safely delivered to your home address.

If you have any questions, please contact me directly at 212-261-8158.


The Firm wishes you the very best moving forward.


Sincerely,

Molly Donaldson, SHRM-CP
Director of Human Resources
Mendes & Mount, LLP

MRN: 1007-5188
Visit: 122-138-945
Age: 32y (06-Jun-1993)

**CALDERON ORTIZ, Ana E**
**(Ms.)**
**Gender: Female**

**BronxCare Health System**
**Current Location:**
**8PA-802-B**

✎ **Discharge Instructions, Psychiatry [Charted Location: 8PA-802-B] [Date of Service: 03-Sep-2025 08:27, Authored: 03-Sep-2025 08:27]- for Visit: 122-138-945**, *Complete, Revised, Signed in Full, Available to Patient as of 03-Sep-2025 08:36*

## Reason for Inpatient Admission :

- **Reason for Inpatient Admission:** Patient is a 32 year old female with history of Schizoaffective disorder, brought in from AOPD1, for disorganized behavior, paranoia, and noncompliance with medications.

Patient received both loading doses of Invega Sustenna LAI. Monthly maintenance dose of Invega Sustenna 234mg Im is due on 09/22/2025.

## Your Diagnosis is/Su Diagnóstico es:
## Primary Psychiatric Diagnosis:

- **Primary Psychiatric Diagnosis:** Schizoaffective disorder

## Other Psychiatric Diagnoses:

- **Other Psychiatric Diagnoses:** Agitation
  Disorganized behavior
Noncompliance with treatment

## Medication Reconciliation:
A review of your medications was performed. Please review this list and if you have any questions please contact your care provider immediately. Remember to bring this medication list to your next medical appointment to update your provider on the medications you are taking at home.

## Medication Prescribed This Visit:
The following medications were prescribed for you during this visit. You may ask your pharmacist to print your medication labels in your preferred language.

- **paliperidone 234 mg/1.5 mL intramuscular suspension, extended release**: 234 milligram(s) intramuscularly every 4 weeks Last given on 08/25/2025. Next dose due on 09/22/2025, Transmission Status: None
- **benztropine 0.5 mg oral tablet**: 1 tab(s) orally 2 times a day x 15 days, Transmission Status: eSubmit Successful
- **lithium 450 mg oral tablet, extended release**: 1 tab(s) orally 2 times a day x 15 days, Transmission Status: eSubmit Successful

## Preferred Pharmacy:
HOPEWELL PHARMACY
251 E 188th St Bronx NY 104585301
718-7336722.

## Comprehensive Medication List:
According to your medical records here at BronxCare Health System you are on the following medications.

Elsevier Interactive Patient Education - Ana CALDERON ORTIZ - ID# 122-138-945 - MR# 1007-5188



**BronxCare Health System**
**1650 Grand Concourse,**
**Bronx, NY 10457**
**Tel. (718) 590 1800**

Patient Name: Ana CALDERON ORTIZ
Attending Caregiver: WALYZADA, FROZAN

# Psychosis

Psychosis, also called thought disturbance, refers to a severe loss of contact with reality. People having a psychotic episode (*acute episode of psychosis*) are not able to think clearly, and their emotions and responses do not match with what is actually happening. They may be very upset, have chaotic behavior, or be very quiet and withdrawn.

People having a psychotic episode may have false beliefs about what is happening or who they are (*delusions*). They may see, hear, taste, smell, or feel things that are not present (*hallucinations*).

WHAT ARE THE CAUSES?
This condition may be caused by:

- Very serious mental health or psychiatric conditions, such as schizophrenia, bipolar disorder, or major depression.
- Use of drugs such as hallucinogens or alcohol.
- Medical conditions such as delirium or neurological disorders.

WHAT ARE THE SIGNS OR SYMPTOMS?
Symptoms of this condition include:

- Delusions, such as:

  - Feeling a lot of fear or suspicion (*paranoia*).
  - Believing something that is odd, unrealistic, or false, such as believing that you are someone else.
- Hallucinations, such as:

  - Hearing or seeing things, smelling odors, experiencing tastes, or feeling bodily sensations that do not exist.
  - Command hallucinations that direct you to do something that could be dangerous.
- Disorganized thinking, such as thoughts that jump from one idea to another in a way that does not make sense.
- Disorganized speech, such as saying things that do not make sense, echoing others, or using words based on their sounds rather than their meanings.
- Inappropriate behavior, such as talking to yourself, showing a clear increase or decrease in activity, or intruding on unfamiliar people.

Elsevier Interactive Patient Education - Ana CALDERON ORTIZ - ID# 122-138-945 - MR# 1007-5188

## HOW IS THIS DIAGNOSED?

This condition is diagnosed based on an assessment by a health care provider.



➤ The health care provider may ask questions about:

- Your thoughts, feelings, and behavior.
- Any medical conditions you have.
- Any use of alcohol or drugs.

➤ One or more of the following may also be done:

- A physical exam.
- Blood tests.
- Brain imaging, such as a CT scan or MRI.
- A brain wave study (*electroencephalogram*, or EEG).

The health care provider may refer you to a mental health professional for further tests.

## HOW IS THIS TREATED?

Treatment for this condition may depend on the cause of the psychosis. Treatment may include one or more of the following:

➤ Supportive care and monitoring in the emergency room or hospital. You may need to stay in the hospital if you are a danger to yourself or others.

➤ Taking antipsychotic medicines to reduce symptoms and to balance chemicals in the brain.

➤ Treating an underlying medical condition.

➤ Stopping or reducing drugs that are causing psychotic episodes.

➤ Therapy and other supportive programs, such as:

- Ongoing treatment and care from a mental health professional.
- Individual or family therapy.
- Training to learn new skills to cope with the psychosis and prevent further episodes.

## FOLLOW THESE INSTRUCTIONS AT HOME:

➤ Take over-the-counter and prescription medicines only as told by your health care provider.

➤ Consult a health care provider before taking over-the-counter medicines, herbs, or supplements.

➤ Surround yourself with people who care about you and can help manage your condition.

➤ Keep stress under control. Stress may trigger psychosis and make symptoms worse.

➤ Maintain a healthy lifestyle. This includes:

- Eating a healthy diet.
- Getting enough sleep.
- Exercising regularly.
- Avoiding alcohol, nicotine, and recreational drugs.

➤ Keep all follow-up visits. This is important.

## CONTACT A HEALTH CARE PROVIDER IF:

➤ Medicines do not seem to be helping.

➤ You or others notice that:

- You continue to see, smell, or feel things that are not there.

Elsevier Interactive Patient Education - Ana CALDERON ORTIZ - ID# 122-138-945 - MR# 1007-5188

- You hear voices telling you to do things.
- You feel extremely fearful and suspicious that someone or something will harm you.
- You feel unable to leave your house.
- You have trouble taking care of yourself.

➢ You have side effects of medicines, such as:

- Changes in sleep patterns.
- Dizziness.
- Weight gain.
- Restlessness.
- Movement changes.
- Shaking that you cannot control (*tremors*).

## GET HELP RIGHT AWAY IF:

➢ You have serious side effects of medicine, such as:

- Swelling of the face, lips, tongue, or throat.
- Fever, confusion, muscle spasms, or seizures.

➢ You have serious thoughts about harming yourself or hurting others.

**Get help right away if you feel like you may hurt yourself or others, or have thoughts about taking your own life. Go to your nearest emergency room or:**

➢ **Call 911.**
➢ **Call the National Suicide Prevention Lifeline at 1-800-273-8255 or 988. This is open 24 hours a day.**
➢ **Text the Crisis Text Line at 741741.**

**These symptoms may be an emergency. Get help right away. Call 911.**

➢ **Do not wait to see if the symptoms will go away.**
➢ **Do not drive yourself to the hospital.**

## SUMMARY

➢ Psychosis refers to a severe loss of contact with reality. People having a psychotic episode are not able to think clearly, and they may have delusions or hallucinations.
➢ The health care provider may refer you to a mental health professional for further tests.
➢ Treatment may include therapy and other supportive programs such as individual or family therapy.
➢ Contact a health care provider if medicines do not seem to be helping.

Document Released: 6/7/2011 Document Revised: 11/13/2022 Document Reviewed: 11/13/2022
Elsevier Interactive Patient Education ©2019 Elsevier Inc. This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

# BronxCare Health System · www.bronxcare.org

Elsevier Interactive Patient Education - Ana CALDERON ORTIZ - ID# 122-138-945 - MR# 1007-5188



**BronxCare Health System**
1650 Grand Concourse,
Bronx, NY 10457
Tel. (718) 590 1800

Patient Name: Ana CALDERON ORTIZ
Attending Caregiver: WALYZADA, FROZAN

# Schizoaffective Disorder

Schizoaffective disorder is a mental illness. It may cause psychotic symptoms and symptoms of a mood disorder. Mood disorders are also called affective disorders. Psychotic symptoms involve losing touch with reality.

Schizoaffective disorder may consist of symptoms of depression or mania. Mania is having emotional highs that include very high energy, racing thoughts, very high self-esteem, and decreased ability to concentrate.

Schizoaffective disorder moods usually occur in cycles. Periods of severe symptoms may be followed by periods of less severe symptoms. The illness affects women slightly more often than men. It usually appears at an earlier age in men, usually in teenage or early adult years.

Schizoaffective disorder may interfere with personal relationships or normal daily activities. People with schizoaffective disorder are at higher risk for:

➢ Job loss.
➢ Withdrawal from family and friends (*social isolation*).
➢ Health problems.
➢ Anxiety.
➢ Substance use disorders.
➢ Suicide.

WHAT ARE THE CAUSES?
The exact cause of this condition is not known.

WHAT INCREASES THE RISK?
The following factors may make you more likely to develop this condition:

➢ Problems that affected your brain development before you were born.
➢ Problems with chemicals in the brain.
➢ Having family members with bipolar disorder, schizoaffective disorder, or schizophrenia.
➢ A history of substance abuse.
➢ Being a victim of neglect or abuse, long-term or chronic.

WHAT ARE THE SIGNS OR SYMPTOMS?
Symptoms of this condition include psychotic symptoms and affective symptoms.

**Psychotic symptoms**

Psychotic symptoms may include:

- Seeing, hearing, tasting, smelling, or feeling things that are not real (*hallucinating*).
- Having false beliefs (*delusions*). You may believe that you are being attacked, persecuted, or plotted against (*paranoid delusions*).
- Speaking in a way that makes no sense to others (*disorganized speech*).
- Behaving in a confused or odd way.
- Losing motivation for normal daily activities, such as self-care.
- Having problems or losing interest in relating to others.

**Affective symptoms**

Affective symptoms may include:

- Symptoms similar to major depression, such as:

  - Having a depressed mood.
  - Losing interest in activities that are usually pleasurable.
  - Having trouble sleeping and eating, keeping up energy, and staying motivated.
  - Thinking a lot about death or suicide.
- Symptoms of mania, such as:

  - Having an abnormally elevated mood, energy level, and activity level that feels out of control.
  - Feeling more confident than normal or feeling that you are able to do anything (*grandiosity*).
  - Having long-term trouble sleeping.
  - Being easily distracted.
  - Talking more than usual or feeling pressure to keep talking.
  - Having racing thoughts.
  - Engaging in high-risk activities.

HOW IS THIS DIAGNOSED?
Schizoaffective disorder is diagnosed through an assessment by your health care provider. The health care provider:

- Will observe and ask questions about your thoughts, behavior, mood, and ability to function in daily life.
- May ask questions about your medical history and use of drugs, including prescription medicines. Certain medical conditions and substances can cause symptoms that resemble schizoaffective disorder.
- May do blood tests and imaging tests.

HOW IS THIS TREATED?
Schizoaffective disorder is usually a lifelong illness that requires long-term treatment. Treatment may include:

- Medicine. The exact combination depends on the type and severity of your symptoms.

  - Antipsychotic medicine may be used to control psychotic symptoms such as delusions, paranoia, and hallucinations.

Elsevier Interactive Patient Education - Ana CALDERON ORTIZ - ID# 122-138-945 - MR# 1007-5188

- Mood stabilizers may be used to balance the highs and lows of bipolar manic mood swings.
- Antidepressant medicines may be used to treat depressive symptoms.
- Counseling or talk therapy. Individual, group, or family counseling may be helpful in providing education, support, and guidance. Many people with schizoaffective disorder also benefit from social skills and job skills training.
- Electroconvulsive therapy (ECT). This is a procedure in which electricity is applied to the brain through the scalp. This may be used to treat people with severe manic symptoms who do not respond to medicine and counseling.

A combination of medicine and counseling is usually best for managing the disorder.

## FOLLOW THESE INSTRUCTIONS AT HOME:



- Take over-the-counter, prescription medicines, and herbal remedies only as told by your health care provider. Check with your health care provider before starting new medicines.
- Surround yourself with people who care about you and can help you manage your condition.
- Keep stress under control. Stress may make symptoms worse.
- Avoid alcohol and drugs. They can affect how medicines work and may make symptoms worse.
- Keep all follow-up visits. This is important.

## CONTACT A HEALTH CARE PROVIDER IF:
- You are not able to take your medicines as prescribed.
- Your symptoms get worse.

## GET HELP RIGHT AWAY IF:
- You feel out of control.
- You or others notice warning signs of suicide, such as:

  - Using drugs or alcohol more often.
  - Expressing feelings of not having a purpose in life or feeling trapped, guilty, anxious, agitated, or hopeless.
  - Showing uncontrolled anger, recklessness, and dramatic mood changes.
  - Talking about suicide or searching for methods of suicide.

**Get help right away if you feel like you may hurt yourself or others, or have thoughts about taking your own life. Go to your nearest emergency room or:**

- **Call 911.**
- **Call the National Suicide Prevention Lifeline at 1-800-273-8255 or 988. This is open 24 hours a day.**
- **Text the Crisis Text Line at 741741.**

## SUMMARY
- Schizoaffective disorder causes symptoms that are a mixture of a psychotic disorder and a mood disorder.
- A combination of medicine and counseling is usually best for managing the disorder.
- People who have schizoaffective disorder are at risk for suicide. Get help right away if you or someone else notices warning signs of suicide.

Document Released: 4/29/2008 Document Revised: 11/13/2022 Document Reviewed: 11/13/2022
Elsevier Interactive Patient Education ©2019 Elsevier Inc. This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

Case 1:26-cv-02373-LLS   Document 1   Filed 03/23/26   Page 41 of 65

# BronxCare Health System · www.bronxcare.org

**FORD FOUNDATION**

**Ford
Foundation**

April 18, 2023

To Whom It May Concern,

This confirms that Ana Calderon's was employed by the Ford Foundation from August 28, 2017 to January 8, 2020 as a full-time Accounting Analyst.

If you have any questions regarding the above, please contact me at c.block@fordfoundation.org.

Sincerely,

*Charmaine Block*

Charmaine Block
Senior Manager, Global Benefits &
Administration

Working with visionaries on the
frontlines of social change worldwide

fordfoundation.org

| MRN: 1007-5188 | CALDERON, Ana | BronxCare Health System |
| Visit: 115-132-128 | Gender: Female | Current Location: CPEP |
| Age: 26y (06-Jun-1993) | | |

Psychiatry MD Discharge Note/Summary [Charted Location: CPEP] [Date of Service: 08-Jan-2020 12:18, Authored: 08-Jan-2020 12:18]- for Visit: 115-132-128, *Complete, Revised, Signed in Full, General*

### Demography Details:
* This 26 year old Female patient presents for initial evaluation of psychosis. History was obtained from the patient. Patient ethnicity: Hispanic.

### Chief Complaint:
* **Chief Complaint (Patient's own words):** " I need to sleep".

### HPI:
### Circumstances of this Admission:
* **Circumstances of this Admission Including the Reasons, Events, and Precipitants:** Patient is a 26 year old  Hispanic woman, domiciled (with husband and 5yo son), with no reported psychiatric and medical history, BIB EMS from medical ED where she was BIB EMS activated by the husband for bizarre behavior in context of drug use.

Patient report she has not slept in the last 1 month and she has been seeing things that look like demons and monsters . she adds she sees them everywhere and also sees as they possess her 5 year old son making him say things like explosion, when asked to describe what the demons look like she reports " they are horrible . I don't want to remember them" . she reports she has also been hearing voices but is unable to say what they voices say . She adds they are many voices , but they don't tell her to hurt herself or others . She further states she knows her problem is spiritual and she knows she has a way of communicating with the spirits and she has stopped watching TV because she believes she is being monitored by the TV , and the TV is communicating with her . she adds this communication between her and the TV started before she became unable to sleep . she adds her phone is also being used to monitor her . She reports she stays up all night trying to sleep and not understanding why she can't sleep . She denies suicidal or homicidal ideations , she denies symptoms of anxiety or PTSD . She denies drug use , but as per Electronic Medical Record from CL note . her friend saw some pills of ativan in her purse .

### Home Medications:
*Patient Currently Takes Medications as of 08-Jan-2020 12:13 documented in Structured Notes*

### Allergies:
* No Known Allergies:

### Abuse:
* **Has patient been hit/kicked/slapped or forced to have sex , or is a victim of neglect?:** no
* **Suspected Physical Abuse?:** no
* **Suspected Sexual Abuse?:** no
* **Suspected Neglect?:** no

### Hospital Course:
* **Hospital Course:** Ana has no hx of mental illness presented to cpep with bizarre behavior. Was observed in cpep, no issues reported or noted. On evaluation today, has improved of initial presenting symptoms. Reported that for the past one week she felt like she has been

Requested by: WOOLERY, JAMES (Clerk.), 25-Mar-2020 13:01                    Page 1 of 6

| MRN: 1007-5188<br>Visit: 115-132-128<br>Age: 26y (06-Jun-1993) | CALDERON, Ana<br>Gender: Female | BronxCare Health System<br>Current Location: CPEP |
|---|---|---|

possessed and was feeling scared, was not sleeping well so her husband called EMS. Added that she does not live with her husband any more, lives with mother and 5 yr old son. Presently, there is no gross mood dysregulation, there are no psychotic signs or symptoms present and there has been no suicidality/homicidality. Writer spoke to the cousin Mr. Gabrial delarosa 917-473-7980 using spanish interpreter # 342808 who corroborated the above and agreed with the discharge planning. Currently patient is stable and does not endorse danger towards self or others, he is safe to be discharged to the community with outpatient and MCT services in place. Cousin will be coming to pick the patient up.

## Date of Service:
• Date of Discharge: 08-Jan-2020.

## Mental Status Examination at Discharge:

| | |
|---|---|
| • **Appearance** | Within Normal Limits |
| • **Build/Stature** | Thin |
| • **Posture** | Within Normal Limits |
| • **Eye Contact** | Average |
| • **Activity/Psychomotor** | Within Normal Limits |
| • **Attitude Toward Examiner** | Cooperative |
| • **Attitude Toward Parent/Guardian** | Not Applicable |
| • **Separation (for Children/Adolescent)** | Not Applicable |
| • **Mood** | Euthymic |
| • **Affect** | Full Range |
| • **Speech** | Clear with Normal Rate and Volume |
| • **Thought Process** | Goal Directed |
| • **Perceptual** | Within Normal Limits |
| • **Thought Content** | Within Normal Limits |
| • **Delusions** | None Elicited |
| • **Suicidal** | None Reported or Elicited |
| • **Violent** | None Reported or Elicited |
| • **Level of Consciousness** | Full |
| • **Orientation** | Oriented to Person; Oriented to Time; Not Oriented to Place |
| • **Attention/Concentration** | Within Normal Limits |
| • **Memory** | Within Normal Limits |
| • **Cognition** | Within Normal Limits |
| • **Intelligence** | Average |
| • **Insight** | Within Normal Limits |
| • **Judgment** | Within Normal Limits |

## Columbia-Suicide Severity Rating Scale:
## Suicide Risk Screening Since Last Visit (Adapted from CSSRS)

**Wish to be Dead:** No
**Suicidal Thoughts:** No
**Suicide Behavior Activity:** No
**Have you made a suicide attempt:** No

## Based on the suicide risk screening information from the C-SSRS, the patient's suicide risk level is determined to be: Low

MRN: 1007-5188
Visit: 115-132-128
Age: 26y (06-Jun-1993)

CALDERON, Ana
Gender: Female

BronxCare Health System
Current Location: CPEP

## Historical (Static) Suicide Risk Factors

History of suicide attempt:  no
History of near lethal attempt or plan: no
History of major mental illness: no
History of prior psychiatric hospitalization: no
History of active substance use: no
History of being a victim of physical or sexual abuse: no
History of family suicide (first degree relative): no
History of a chronic medical, terminal illness or neurological disorder including seizures: no
History of non-adherence to treatment: No

## Current (Dynamic) Risk Factors

### *Active Signs or Symptoms:*
Patient has made a suicide attempt include aborted or interrupted attempt within one week of admission: no
Patient has delirium or is confused: no
Patient displays aggressive behavior toward others: no
Patient is agitated/very anxious: no
Patient has severe insomnia: no
Patient has a command auditory hallucination to kill self: no
Patient has suicidal thoughts but no plan or intent: no
Patient has suicidal thoughts with plan or intent: no
Patient is hopeless and cannot give any reasons for living: no
Patient perceives themselves as a burden on family or others: no
Patient has access to or has taken steps to obtain a weapon within one week of admission: no
Patient has access to materials/opportunity for hanging or asphyxiation, pills or ingestible poisons: no
Patient is refusing to or is unable to agree to use a safety plan (not confident in one's ability to stay safe): no

### *Active Psychosocial Risk Factors:*
Newly diagnosed major medical condition: no
Patient has recently experienced a stressful life event (legal problems, loss of job): no
Recent discharge from an Inpatient Psychiatric Unit (within the past year): no
Patient has had a recent traumatic experience: no
Patient is having a major relationship issue including conflict with, or loss of family/partner: no
Patient had a recent change in treatment provider: no
Patient has few or no social supports: no

| MRN: 1007-5188<br>Visit: 115-132-128<br>Age: 26y (06-Jun-1993) | CALDERON, Ana<br>Gender: Female | BronxCare Health System<br>Current Location: CPEP |
|---|---|---|

Patient has recent or ongoing social rejection, humiliation, bullying (cyberbullying) or victimization: no

**Two Foreseeable Changes** : Two events or changes that could increase patient's suicide risk as stated by patient (example: eviction, loss of major relationship)

**Event 1.** denied
**Event 2.** denied

**Protective Factors:** Identifies reasons for living

**Suicide Risk Clinical Formulation**

**Please summarize the most relevant risk and protective factors, including those that are most modifiable:** denied

**Based on my review/assessment of Suicide Risk factors I have determined that the patient's current Risk Level for Suicide during this hospitalization is:** low

**Based on my review/assessment of Suicide Risk Factors I have determined that the patient's Risk Level for suicide in the community at the present time is:** low

**Clinical Formulation and Rationale for Suicide Risk Assessment (If CSSRS Risk Rating level was changed, indicate the reason why):** see hpi

**Suicide Care Management Plan, using AIM (Assess-Intervene-Monitor):** Close Observation Level

**VIOLENCE RISK ASSESSMENT:**
**Historical Violence Risk Factors:**

| | |
|---|---|
| • History of prior violence | no |
| • History of threats of violence | no |
| • History of arrests | no |
| • History of incarceration | no |
| • History of institutional violence | no |

**Current Violence Risk Factors:**

| | |
|---|---|
| • Was violence a precipitant of the current hospitalization | no |
| • Is the patient paranoid or has persecutory delusions | no |
| • Does the patient report command hallucinations to hurt others | no |
| • Does the patient report having any | no |

| MRN: 1007-5188<br>Visit: 115-132-128<br>Age: 26y (06-Jun-1993) | CALDERON, Ana<br>Gender: Female | BronxCare Health System<br>Current Location: CPEP |
|---|---|---|

violent thoughts
- **Has the patient tried/obtained firearm** no
  **or has moved an existing one**
- **Is the patient easily angered or** no
  **irritable/agitated or needing PRN**
  **medications**
- **Is the patient physically threatening to** no
  **patient or staff**

## Overall Violence Risk during this hospitalization:
- Based on my review/assessment of both Historical & Current Violence Risk Factors I have determined that the patient's current Risk Level for violence during this hospitalization is: Low.

## Overall Violence Risk Level in Community at Present:
- Based on my review/assessment of both Historical & Current Violence Risk Factors I have determined that the patient's Risk Level for Violence in the community at the present time is: Low.

## PRESCRIPTIONS:
## Prescriptions:
*\* Patient Currently Takes Medications as of 08-Jan-2020 12:13 documented in Structured Notes*

## Multiple Antipsychotic at Discharge:
- **Was the patient prescribed more than one antipsychotic medication at the time of discharge?:** No

## DIAGNOSTIC IMPRESSION (DSM-5/ICD10):
## Psychiatric Diagnosis:
> **Psychosis, transient:** Status: Active, ICD-10: F09

## Medical Diagnosis:
> **Asthma:** ICD-10: J45.909, Status: Active

## Discharge Plan:
- **Condition on Discharge:** patient has residual symptoms but is appr for next level
- **Patient:** is being discharged to outpatient facility
- **Discharge Recommendations:** -Follow up appointment at Bronx Lebanon Fulton AOPD
  - Recommended compliance with follow up to Psychiatrist and with your primary care provider.
  - If notice any side-effect from medication, please inform your psychiatrist/ primary care provider
- **Discharge Plan was discussed with:** patient  patient's family/collaterals  nursing staff  social work staff
- **Did the individual leave against medical advice (AMA):** no
- **Does the individual have a sufficient amount of medication until his/her follow up appointment:** yes

## Session Duration:
- **Session Duration:** 40 minutes

## Procedure:
- **Procedure:** 99239 Hospital discharge day management (>30 Min) (Inpatient)

## Electronic Signatures:
**HANIF, AMINA (MD)**  (Signed 08-Jan-2020 12:34)
> *Authored: DEMOGRAPHICS, CHIEF COMPLAINT, HPI, HOME MEDICATIONS, ALLERGIES, ABUSE, HOSPITAL COURSE, MENTAL STATUS EXAM, SUICIDE RISK*

MRN: 1007-5188
Visit: 115-132-128
Age: 26y (06-Jun-1993)

**CALDERON, Ana**
Gender: Female

BronxCare Health System
Current Location: CPEP

*ASSESSMENT, VIOLENCE RISK ASSESSMENT, PRESCRIPTIONS, DIAGNOSTIC IMPRESSION (DSM-5/ICD10), DISCHARGE PLAN, PROCEDURES *****ATTENDINGS ONLY******

**Last Updated:** *08-Jan-2020 12:34 by HANIF, AMINA (MD)*

**APPLICABLE LAWS**

*Psychiatric Malpractice:*

*Americans with disability act: title III (42 U.S.C 12101)*

- *Prohibits discrimination on the basis of disabilities in private hospitalsP*


*42 U.S. Code 9501 – Bill of Rights*
- *Right to appropriate treatment*


*Mental Hygiene Law, section 29.15*
- *Transition back to community*


*NYS Human Rights Law – Article 33*
- *Right to dignity*
- *Right to humane care*
- *Protection against discrimination*
- *Respectful treatment*
- *Freedom from abuse*

Case 1:26-cv-02373-LLS    Document 1    Filed 03/23/26    Page 52 of 65

The **Americans with Disabilities Act (ADA)** is a federal law that protects the rights of people with disabilities by eliminating barriers to their participation in many aspects of working and living in America. In particular, Title I of the ADA prohibits covered employers from discriminating against people with disabilities in the full range of employment-related activities, from recruitment to advancement to pay and benefits.

- **Covered employers**: Title I of the ADA applies to employers (including state or local governments) with 15 or more employees and to employment agencies, labor organizations and joint labor-management committees with any number of employees.

- **Covered individuals**: The ADA protects individuals with a disability who are qualified for the job, meaning they have the skills and qualifications to carry out the essential functions of the job, with or without accommodations. An individual with a disability is defined as a person who: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

- **Medical and disability-related leave rules**: The ADA does not specifically require employers to provide medical or disability-related leave. However, it does require employers to make reasonable accommodations for qualified employees with disabilities if necessary to perform essential job functions or to benefit from the same opportunities and rights afforded employees without disabilities. Accommodations can include modifications to work schedules, such as leave. There is no set leave period mandated because accommodations depend on individual circumstances and should generally be granted unless doing so would result in "undue hardship" to the employer.



**CRIMINAL RESOURCE MANUAL**

## CRM 2000 - 2500

# 2456. 29 U.S.C. 201 TO 219 -- Fair Labor Standards Act

The Fair Labor Standards Act (FLSA) provides a national minimum hourly wage (29 U.S.C. § 206), mandatory overtime compensation (29 U.S.C. § 207), and restrictions on the employment of minors (29 U.S.C. § 212). The FLSA also requires employers to maintain accurate employee records in accordance with the Act's provisions (29 U.S.C. § 211). To ensure employer compliance with these requirements, both civil and criminal sanctions were provided. Section 215 of Title 29, United States Code, lists the prohibited acts under the FLSA. Section 216(a) of Title 29, United States Code, provides a criminal misdemeanor penalty for willful violations of 29 U.S.C. § 215. Imprisonment up to six (6) months for each offense may be imposed only upon a second or subsequent conviction for an offense under the Act.

Section 216(b) of Title 29 provides for an employer's civil liability for violations of 29 U.S.C. § 215. Broad injunctive relief to curtail any practice which would constitute a violation of section 215 or to obtain remedial action is available under Section 217 of Title 29, United States Code. Where an employer consistently violates a decree or consent judgment, or where the FLSA violations are sufficiently aggravated, criminal sanctions can be pursued under 18 U.S.C. § 401 or 29 U.S.C. § 216. Following conviction under 29 U.S.C. § 216(a) for a monetary violation, it is suggested that restitution be pursued as a part of the criminal sentence.

[cited in JM 9-139.020]

LII | Legal Information Institute
https://www.law.cornell.edu › U.S. Code › Title 29

# 29 U.S. Code Chapter 28 - FAMILY AND MEDICAL LEAVE

**29 U.S. Code Chapter 28 - FAMILY AND MEDICAL LEAVE** · § 2601. Findings and purposes · SUBCHAPTER I—GENERAL REQUIREMENTS FOR LEAVE (§§ 2611 – 2620) · SUBCHAPTER II— ...

### AI Overview



The primary FMLA law code is located within the U.S. Code at **29 U.S.C. § 2601** and further defined and explained by regulations in **29 CFR Part 825**. These laws and regulations outline the requirements for covered employers and the eligibility and leave entitlements for eligible employees, covering reasons for leave such as the birth of a child, a serious health condition of a family member, and military-related leave.

### The Core of the FMLA Law Code

### 29 U.S.C. § 2601 (Findings and Purposes)

: This section establishes the foundational purposes of the Family and Medical Leave Act, including balancing family and work demands and promoting family stability.

### 29 CFR Part 825 (Regulations)

: This part of the Code of Federal Regulations provides the detailed rules for how the FMLA is implemented. It is divided into several subparts that cover:

- **Coverage** of the Act.

- **Employee Leave Entitlements**.

- **Employee and Employer Rights and Obligations**.

- **Enforcement** mechanisms.

- **Recordkeeping** requirements.

| 29 U.S. Code § 2601 - Findings and purposes | 29 CFR Part 825 - THE FAMILY AND MEDICAL... | 29 CFR Part 825 Family and Medi |
|---|---|---|
| The purposes of the Act include: * Balancing the demands of the... | 29 CFR Part 825 - THE FAMILY AND MEDICAL LEAVE ACT OF 1993 *... | Enhanced Content contents for this page |
| LII Legal Information Institute | LII LII \| Legal Information Instit... | eCFR (.gov) |

Case 1:26-cv-02373-DLS    Document 1    Filed 03/23/26    Page 55 of 65

The **Family and Medical Leave Act (FMLA)** is a federal law designed to help workers balance job and family responsibilities by giving employees up to 12 weeks of unpaid leave per year for specific reasons, including a serious health condition or to care for an immediate family member who has a serious health condition. During FMLA leave, employers must continue employee health insurance benefits and, upon completion of the leave, restore employees to the same or equivalent positions.

- **Covered employers**: The FMLA applies to private employers with 50 or more employees working within 75 miles of the employee's worksite. Employers with fewer than 50 employees can also choose to provide benefits similar to those required by the FMLA, and many find it beneficial to do so. The FMLA also applies to all public agencies and private and public elementary and secondary schools, regardless of the number of employees.

- **Covered individuals**: Employees are eligible to take FMLA leave if they have worked for their employer for at least 12 months, and have worked for at least 1,250 hours over the 12 months immediately prior to the leave, if there are at least 50 employees working within 75 miles of the employee's worksite.

- **Medical and disability-related leave rules**: Eligible employees can take up to 12 weeks of leave for treatment of or recovery from serious health conditions. The FMLA's definition of a serious health condition is broader than the definition of a disability, encompassing pregnancy and many illnesses, injuries, impairments, or physical or mental conditions that require multiple treatments and intermittent absences. Generally, things like cosmetic surgery, colds, headaches, and routine medical and dental care are not included. FMLA leave is unpaid, but employers may require employees to concurrently take paid leave, such as accrued vacation or sick leave, or employees may elect to do so.

- **Additional information**: DOL's Wage and Hour Division enforces the FMLA and has online compliance assistance resources for employers. In addition, DOL has an interactive FMLA Advisor for employers and employees.

# SECTION 33.03

## Quality of care and treatment

**Mental Hygiene (MHY) CHAPTER 27, TITLE E, ARTICLE 33**

§ 33.03 Quality of care and treatment.

(a) Each patient in a facility and each person receiving services for mental disability shall receive care and treatment that is suited to his needs and skillfully, safely, and humanely administered with full respect for his dignity and personal integrity.

NYS Open Legislation | NYSenate.gov

5. freedom from abuse and mistreatment by employees or other residents
of the facility;

# ARTICLE 33

## Rights of Patients

**Mental Hygiene (MHY) CHAPTER 27, TITLE E**

| | |
|---|---|
| **SECTION 33.01** | Protection of patients' rights |
| **SECTION 33.02** | Notice of rights of individuals with mental disabilities |
| **SECTION 33.03** | Quality of care and treatment |
| **SECTION 33.04** | Restraint of patients |
| **SECTION 33.05** | Communications and visits |
| **SECTION 33.06** | Reports of abuse, neglect, and significant incidents |
| **SECTION 33.07** | Care and custody of the personal property of persons receiving services |

| **SECTION 33.08** | Personal needs allowance for residents of state psychiatric centers and state operated alcoholism facilities |
|---|---|
| **SECTION 33.09** | Employment of patients |
| **SECTION 33.11** | Education for children with mental disabilities |
| **SECTION 33.12** | Hearing evaluation |
| **SECTION 33.13** | Clinical records; confidentiality |
| **SECTION 33.14** | Sealing of records pertaining to treatment for mental illness |
| **SECTION 33.15** | Habeas corpus |
| **SECTION 33.16** | Access to clinical records |
| **SECTION 33.17** | Transportation of individuals |

| **SECTION 33.21** | Consent for mental health treatment of minors |
| --- | --- |
| **SECTION 33.23** | Incident notifications and reports |
| **SECTION 33.25** | Release of records pertaining to allegations and investigations of abuse and mistreatment |
| **SECTION 33.27** | Independent substance use disorder and mental health ombudsman |
| **SECTION 33.28** | Independent developmental disability ombudsman program |

ARTICLE 33

RIGHTS OF PATIENTS
Section 33.01 Protection of patients' rights.

33.02 Notice of rights of individuals with mental disabilities.

33.03 Quality of care and treatment.

33.04 Restraint of patients.

33.05 Communications and visits.

33.06 Reports of abuse, neglect, and significant incidents.

33.07 Care and custody of the personal property of persons

receiving services.

33.08 Personal needs allowance for residents of state

psychiatric centers and state operated alcoholism

facilities.

33.09 Employment of patients.

33.11 Education for children with mental disabilities.

33.12 Hearing evaluation.

33.13 Clinical records; confidentiality.

33.14 Sealing of records pertaining to treatment for mental

illness.

33.15 Habeas corpus.

33.16 Access to clinical records.

33.17 Transportation of individuals.

33.21 Consent for mental health treatment of minors.

33.23 Incident notifications and reports.

33.25 Release of records pertaining to allegations and

investigations of abuse and mistreatment.

33.27 Independent substance use disorder and mental health

ombudsman.

33.28 Independent developmental disability ombudsman program.

**42 USC 9501: Bill of Rights**
Text contains those laws in effect on March 15, 2026

**From Title 42-THE PUBLIC HEALTH AND WELFARE**
    CHAPTER 102-MENTAL HEALTH SYSTEMS
    SUBCHAPTER IV-MENTAL HEALTH RIGHTS AND ADVOCACY
**Jump To:**
    Source Credit

## §9501. Bill of Rights

It is the sense of the Congress that each State should review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require; and in making such review and revision should take into account the recommendations of the President's Commission on Mental Health and the following:

(1) A person admitted to a program or facility for the purpose of receiving mental health services should be accorded the following:

(A) The right to appropriate treatment and related services in a setting and under conditions that-

(i) are the most supportive of such person's personal liberty; and

(ii) restrict such liberty only to the extent necessary consistent with such person's treatment needs, applicable requirements of law, and applicable judicial orders.

(B) The right to an individualized, written, treatment or service plan (such plan to be developed promptly after admission of such person), the right to treatment based on such plan, the right to periodic review and reassessment of treatment and related service needs, and the right to appropriate revision of such plan, including any revision necessary to provide a description of mental health services that may be needed after such person is discharged from such program or facility.

(C) The right to ongoing participation, in a manner appropriate to such person's capabilities, in the planning of mental health services to be provided such person (including the right to participate in the development and periodic revision of the plan described in subparagraph (B)), and, in connection with such participation, the right to be provided with a reasonable explanation, in terms and language appropriate to such person's condition and ability to understand, of-

(i) such person's general mental condition and, if such program or facility has provided a physical examination, such person's general physical condition;

(ii) the objectives of treatment;

(iii) the nature and significant possible adverse effects of recommended treatments;

(iv) the reasons why a particular treatment is considered appropriate;

(v) the reasons why access to certain visitors may not be appropriate; and

(vi) any appropriate and available alternative treatments, services, and types of providers of mental health services.

(D) The right not to receive a mode or course of treatment, established pursuant to the treatment plan, in the absence of such person's informed, voluntary, written consent to such mode or course of treatment, except treatment-

(i) during an emergency situation if such treatment is pursuant to or documented contemporaneously by the written order of a responsible mental health professional; or

(ii) as permitted under applicable law in the case of a person committed by a court to a treatment program or facility.

(E) The right not to participate in experimentation in the absence of such person's informed, voluntary, written consent, the right to appropriate protections in connection with such participation, including the right to a reasonable explanation of the procedure to be followed, the benefits to be expected, the relative advantages of alternative treatments, and the potential discomforts and risks, and the right and opportunity to revoke such consent.

(F) The right to freedom from restraint or seclusion, other than as a mode or course of treatment or restraint or seclusion during an emergency situation if such restraint or seclusion is pursuant to or documented contemporaneously by the written order of a responsible mental health professional.

(G) The right to a humane treatment environment that affords reasonable protection from harm and appropriate privacy to such person with regard to personal needs.

(H) The right to confidentiality of such person's records.

(I) The right to access, upon request, to such person's mental health care records, except such person may be refused access to-

(i) information in such records provided by a third party under assurance that such information shall remain confidential; and

(ii) specific material in such records if the health professional responsible for the mental health services concerned has made a determination in writing that such access would be detrimental to such person's health, except that such material may be made available to a similarly licensed health professional selected by such person and such health professional may, in the exercise of professional judgment, provide such person with access to any or all parts of such material or otherwise disclose the information contained in such material to such person.

(J) The right, in the case of a person admitted on a residential or inpatient care basis, to converse with others privately, to have convenient and reasonable access to the telephone and mails, and to see visitors during regularly scheduled hours, except that, if a mental health professional treating such person determines that denial of access to a particular visitor is necessary for treatment purposes, such mental health professional may, for a specific, limited, and reasonable period of time, deny such access if such mental health professional has ordered such denial in writing and such order has been incorporated in the treatment plan for such person. An order denying such access should include the reasons for such denial.

(K) The right to be informed promptly at the time of admission and periodically thereafter, in language and terms appropriate to such person's condition and ability to understand, of the rights described in this section.

(L) The right to assert grievances with respect to infringement of the rights described in this section, including the right to have such grievances considered in a fair, timely, and impartial grievance procedure provided for or by the program or facility.

(M) Notwithstanding subparagraph (J), the right of access to (including the opportunities and facilities for private communication with) any available-

(i) rights protection service within the program or facility;

(ii) rights protection service within the State mental health system designed to be available to such person; and

(iii) qualified advocate;

for the purpose of receiving assistance to understand, exercise, and protect the rights described in this section and in other provisions of law.

(N) The right to exercise the rights described in this section without reprisal, including reprisal in the form of denial of any appropriate, available treatment.

(O) The right to referral as appropriate to other providers of mental health services upon discharge.

(2)(A) The rights described in this section should be in addition to and not in derogation of any other statutory or constitutional rights.

(B) The rights to confidentiality of and access to records as provided in subparagraphs (H) and (I) of paragraph (1) should remain applicable to records pertaining to a person after such person's discharge from a program or facility.

(3)(A) No otherwise eligible person should be denied admission to a program or facility for mental health services as a reprisal for the exercise of the rights described in this section.

(B) Nothing in this section should-

(i) obligate an individual mental health or health professional to administer treatment contrary to such professional's clinical judgment;

(ii) prevent any program or facility from discharging any person for whom the provision of appropriate treatment, consistent with the clinical judgment of the mental health professional primarily responsible for such person's treatment, is or has become impossible as a result of such person's refusal to consent to such treatment;

(iii) require a program or facility to admit any person who, while admitted on prior occasions to such program or facility, has repeatedly frustrated the purposes of such admissions by withholding consent to proposed treatment; or

(iv) obligate a program or facility to provide treatment services to any person who is admitted to such program or facility solely for diagnostic or evaluative purposes.

(C) In order to assist a person admitted to a program or facility in the exercise or protection of such person's rights, such person's attorney or legal representatives should have reasonable access to-

(i) such person;

(ii) the areas of the program or facility where such person has received treatment, resided, or had access; and

(iii) pursuant to the written authorization of such person, the records and information pertaining to such person's diagnosis, treatment, and related services described in paragraph (1)(I).

(D) Each program and facility should post a notice listing and describing, in language and terms appropriate to the ability of the persons to whom such notice is addressed to understand, the rights described in this section of all persons admitted to such program or facility. Each such notice should conform to the format and content for such notices, and should be posted in all appropriate locations.

(4)(A) In the case of a person adjudicated by a court of competent jurisdiction as being incompetent to exercise the right to consent to treatment or experimentation described in subparagraph (D) or (E) of paragraph (1), or the right to confidentiality of or access to records described in subparagraph (H) or (I) of such paragraph, or to provide authorization as described in paragraph (3)(C)(iii), such right may be exercised or such authorization may be provided by the individual appointed by such court as such person's guardian or representative for the purpose of exercising such right or such authorization.

(B) In the case of a person who lacks capacity to exercise the right to consent to treatment or experimentation under subparagraph (D) or (E) of paragraph (1), or the right to confidentiality of or access to records described in subparagraph (H) or (I) of such paragraph, or to provide authorization as described in paragraph (3)(C)(iii), because such person has not attained an age considered sufficiently advanced under State law to permit the exercise of such right or such authorization to be legally binding, such right may be exercised or such authorization may be provided on behalf of such person by a parent or legal guardian of such person.

(C) Notwithstanding subparagraphs (A) and (B), in the case of a person admitted to a program or facility for the purpose of receiving mental health services, no individual employed by or receiving any remuneration from such program or facility should act as such person's guardian or representative.

( Pub. L. 96–398, title V, §501, Oct. 7, 1980, 94 Stat. 1598 .)